## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

PERRY SINGO,             )
                                )
       Petitioner,        )      No. 3:08-cv-00514
                                )
v.                        )      Chief Judge Sharp
                                )
JOE EASTERLING, WARDEN    )
                                )
       Respondent.      )

## MEMORANDUM OPINION

Petitioner Perry Singo, a state prisoner serving an effective sentence of 49 years for several counts involving the sexual abuse of a child, has filed a *pro se* petition and, through appointed counsel, an amended petition under 28 U.S.C. § 2254 for the writ of habeas corpus. (ECF Nos. 1, 17.) The respondent has filed an answer, along with a copy of portions of the state court record (ECF Nos. 48, 24), and the petitioner has filed a reply (ECF No. 53) and a motion to expand the record, which the respondent opposes. (ECF Nos. 52, 55.)

This case is now fully briefed and ripe for review. For the reasons set forth below, the motion to expand the record (ECF No. 52) will be granted, and the petition for the writ of habeas corpus will be denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

A Dickson County jury convicted Petitioner on March 16, 2000, of four counts of rape of a child and four counts of aggravated sexual battery. The trial court sentenced Petitioner to 25 years for each of the rape counts and 12 years for each battery count, but ordered that all sentences run concurrently except for one count of rape. (ECF No. 24-1, at 2, 20–35, 58–65.) Petitioner's original effective sentence was therefore 50 years.

On direct appeal, Petitioner raised the following 12 issues:

1. Whether the trial court erred in admitting the statement taken from the Defendant by Detective Mike Fleanor and DCS worker Stacy Loveless as a voluntary statement;

2. Whether the trial court erred in allowing the state to introduce written correspondence from the Defendant and photographs, most of which, if not all, were evidence of prior acts of sexual conduct between the Defendant and the victim occurring in the state of Michigan, all of which were outside the time period of the acts indicted;

3. Whether the court erred in allowing unauthenticated photographs;

4. Whether the court erred in instructing the jury that the Defendant's letters and the photographs were circumstantial evidence of a continuing offense that could be used as evidence that the defendant continued to commit the same offense or offenses in Tennessee that he committed in Michigan;

5. Whether the court erred in allowing the prosecution to treat the state's witness, Stacy Loveless, as though she was being cross examined by the state, thus allowing the state to ask leading questions and allowing great latitude in what should have been redirect examination of the witness;

6. Whether the court erred in allowing the state's witness, Stacy Loveless, who was not qualified as an expert, to testify in regard to medical exams of the child victim as well as other child victims in sex abuse cases, and to testify that the grandfather had been ruled out as abusing the victim;

7. Whether the court erred in not granting the Defendant's motion for judgment of acquittal at the end of the state's proof;

8. Whether the court erred in not charging the lesser included offense of assault, even though the testimony was that three of the four incidents of sexual contact admitted to by the Defendant involved the Defendant either masturbating and ejaculating on the child or rubbing his penis on the child's belly;

9. Whether the court erred in allowing one photograph into evidence of a minor sibling of the victim, even though said photograph was not provided to the defense in discovery until the first day of trial;

10. Whether the court erred in not requiring the state to elect offenses, after allowing evidence of numerous acts of sexual conduct between the Defendant and the victim;

11. Whether the court erred in instructing the jury verbally . . . to take the exhibits back to the jury room to find dates to match the counts in the indictment, and should the court have reduced the instructions to writing for the jury since this was a felony case?

12. Whether the trial court erred in denying the Defendant's motion for new trial on the basis that the evidence was not sufficient.

(ECF No. 24-10.)

The Tennessee Court of Criminal Appeals ("TCCA") found that the proof was insufficient to support three of the rape counts, and reversed and dismissed those counts. *State v. Singo*, No. M2001-00919-CCA-R3-CD, 2002 WL 1838142, at *5 (Tenn. Ct. Crim. App. Aug. 9, 2002) (ECF No. 24-13, at 5–6) (hereinafter "*Singo I*"). The court otherwise affirmed Petitioner's convictions and sentences, but "remand[ed] to the trial court for a determination of whether any

2

of the aggravated sexual battery convictions should run consecutively to the child rape conviction." *Id.* at *11 (ECF No. 24-13, at 11).

On remand, the trial court ordered that two of the 12-year sentences for aggravated sexual battery be served consecutive to each other and to the 25-year rape sentence, for an effective sentence of 49 years. (ECF No. 24-14, at 136–140.) Petitioner again appealed, raising the sole issue of whether the trial court had erred in making two counts consecutive on re-sentencing. (ECF No. 24-16.) The TCCA affirmed, and the Tennessee Supreme Court denied permission to appeal. *State v. Singo*, No. M2003-01230-CCA-R3-CD, 2004 WL 343968 (Tenn. Ct. Crim. App. Feb. 24, 2004), *perm. app. denied* (Tenn. Aug. 30, 2004) (ECF No. 24-19) (hereinafter "*Singo II*").

On May 26, 2005, Petitioner filed a *pro se* petition for post-conviction relief, which was followed by the appointment of counsel and the filing of an amended petition. (ECF No. 24-20, at 6–36.) The amended petition raised three grounds for relief:

1. Petitioner's trial counsel and appellate counsel were ineffective;
2. Petitioner's Sixth Amendment right to jury trial was violated when the trial court made factual findings leading to the imposition of consecutive sentences; and
3. Petitioner was denied Fourteenth Amendment Due Process when the trial court increased his sentence without affirmative explanation on remand.

(ECF No. 24-20, at 29–31.) The trial court held a hearing on May 8, 2006, and denied relief on June 16, 2006. (ECF 24-20, at 39–62, 66.) The Petitioner appealed and raised two issues to the TCCA:

1. Whether Appellant received a more severe sentence on re-sentencing, triggering a presumption of vindictiveness under *North Carolina v. Pearce*, 395 U.S. 711 (1969); and
2. Whether Appellant was denied the effective assistance of counsel when trial counsel failed to present evidence of mitigation or to challenge all enhancing factors at a sentencing hearing.

(ECF No. 24-22, at 5.) The TCCA affirmed the denial of relief, and the Tennessee Supreme Court denied permission to appeal on October 15, 2007. *Singo v. State*, No. M2006-01986-

3

CCA-R3-PC, 2007 WL 1836050 (Tenn. Ct. Crim. App. June 27, 2007), *perm. app. denied* (Tenn. Oct. 15, 2007) (ECF No. 24-26) (hereinafter *Singo III*).

Petitioner filed his *pro se* habeas corpus petition in this Court by delivering it to the prison mail room on January 7, 2008. (ECF No. 1-1.)  Respondent does not dispute that the petition was timely. (ECF No. 48, at 2.)  The Court appointed counsel, who filed an amended petition on October 28, 2008. (ECF Nos. 8, 17.)  Respondent filed a motion to dismiss on February 24, 2009, followed by a copy of the state court record. (ECF Nos. 22, 24.)  Respondent's motion was administratively terminated when the Court granted Petitioner's motion to stay this case pending the conclusion of additional state court litigation related to one of his claims. (ECF Nos. 29, 30.)  The case was reopened on April 26, 2011, after the state court denied Petitioner relief. (ECF No. 33.)  On May 26, 2011, Petitioner filed a notice that he was withdrawing his claim that his consecutive sentences were imposed in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), but continuing to rely on his amended petition as the operative petition in all other respects. (ECF No. 35.)  Respondent filed an answer to the amended petition on March 9, 2016, to which Petitioner has replied. (ECF Nos. 48, 53.)  Petitioner has also filed a motion to expand the record with several additional pieces of evidence. (ECF Nos. 49–52.)

This action is fully briefed and ripe for review.

## II.    STATEMENT OF FACTS

The TCCA on direct appeal in *Singo I* summarized the facts of the case as follows:

The defendant, his girlfriend Tina Bosarge, their infant daughter "J.S.," and Bosarge's daughter, the-six-year-old victim, moved to Dickson, Tennessee, from Michigan in October 1998. In December 1998, Detective Michael Fleanor of the Dickson Police Department investigated a complaint about possible sexual abuse. On December 11, 1998, Detective Fleanor and Stacey Loveless of the Department of Children's Services went to the defendant's home, and the defendant agreed to go with them to the Department of Children's Services office for an interview. Detective Fleanor stated the defendant was advised of his rights even though he was not in custody. The defendant signed an admonition and waiver. The interview was taped.

Initially, the defendant denied he had sexually abused the victim. During the interview, the defendant asked Stacey Loveless to leave the room and asked Detective Fleanor to turn off the tape. Detective Fleanor testified that after Loveless left and the tape was turned off, the defendant told him he had sexual contact with the victim during the first of November, in the middle of November, at the end of November, and at the first of December 1998. Fleanor stated the defendant "said that he got oral sex from [the victim], that he would rub his penis on her and he would ejaculate on her." However, Fleanor said the defendant indicated oral sex occurred only once, in the middle of November. Fleanor said he took notes while the tape was not recording.

Then Detective Fleanor resumed taping the defendant's interview. After taping resumed, the defendant said, "Well, a lot of it has started since we've been down here." The defendant told the detective he touched the victim's belly with his penis. He also stated that one night the victim tried to give him a "blow job;" he stuck his penis in her mouth for a couple of seconds; and he then pulled it away from her. The defendant stated the oral sex occurred only once.

Detective Fleanor and jailer Rhonda Felts identified letters written by the defendant while he was incarcerated. Detective Fleanor read aloud excerpts from three of the letters written to Tina Bosarge in July 1999. In the first letter, the defendant asked, "When you decided to offer [the victim] to me, did she agree to it or did you even ask?" In the second letter, the defendant stated:

> "When we get the kids back, I will show you everything [the victim] and I did. You can watch all you want. You can even join in if you want, okay? ... With [the victim], I just love her. I make love to you. I have sex with her. See the difference?"

In the third letter, the defendant wrote:

> Even with [the victim], I feel that I love you more than her. Yes, I love to j--k off on her. Yes, I love to eat her p---y. Yes, I love to stick my d--k in her mouth. Yes, I even love to stick my d--k just as far up in her p---y as I can.... I don't care if I'm banging the hell out of [the victim] and c-m all in or over her five times in one day, that didn't mean I don't love you.... You agree you would want [the victim] in bed with us sleeping and having sex with us,.... You gave [the victim] to me to be my second wife. .... Teach her and have fun with her. I'm going to. How else is she going to learn?.... When I c_m on her, I c-m on you.

Detective Fleanor also read aloud notes which Fleanor said were in the defendant's handwriting. The notes stated:

> Eating a six-year-old has its bad and good.... Every time I eat [the victim], she c-ms, then that's when I want to f--k, c m all over that p---y. Now if I get her in a 69'er, then there's c m all over her face and in her mouth. [The victim] is good to c m on all the time.
>
> Sometimes it is hard to get intimate with a six-year-old, but I do it. [The victim] is hard to get started sometimes, but she comes

5

around. If I get her stoned enough, she will suck me off with no problems. Then there's times I have to c-m on her or her p---y. I've been trying to f--k her-ss, but she is too small.

Detective Fleanor testified the notes were initialed "PLS," which are the defendant's initials.

Stacy Loveless testified that on February 16, 1999, she met with the defendant at the jail pursuant to his request. According to Loveless, the defendant told her his first sexual encounter with the victim was in 1997 in Michigan after the victim requested to perform oral sex on him every day. Loveless stated the defendant told her he, Tina Bosarge, and the victim "had a threesome" during the week of Halloween 1998, after they moved to Tennessee, in which Bosarge and the victim performed sexual acts on him. Loveless stated the defendant said all three of them smoked marijuana and drank alcohol during this incident. Loveless said the defendant claimed the victim and Bosarge fought over him, and Bosarge wanted to include the victim in their sexual relations. Loveless testified the defendant denied penetrating the victim, but told her he had plans to penetrate her when she reached the age of 15 or 16 and have a child with her.

Loveless testified that according to the victim's medical report, the victim said, "Perry f--ked my p---y," while pointing to her vaginal area. Loveless stated the medical exam results showed the victim had a normal genital exam which neither confirmed nor excluded the possibility of sexual contact. Loveless further testified the defendant alleged several other people had abused the victim, including the victim's grandfather, but she found no evidence the grandfather abused the victim.

Loveless said the defendant told her photographs taken in 1997 in Michigan depicting sexual acts with the victim had been turned over to the police. Detective Doyle Wall identified a group of photographs brought to the Dickson Police Department by Bosarge. The photographs show the nude victim spreading her legs; the victim performing fellatio on a man appearing to be the defendant; the man placing his penis on the victim's vagina; and the man ejaculating on the victim. Loveless indicated the man in the photos had a tattoo and other physical characteristics similar to the defendant's. Loveless identified a baby in one of the photos as being J.S., the child of the defendant and Bosarge.

The victim, who was seven years old at the time of trial, testified she was scared of the defendant. She was asked to state some of the things the defendant did to her; the victim responded, "F--k" and "blow job." She indicated she would take her clothes off and they would "f--k." She said the defendant would use his "d k" and she would see "c-m" come out of his penis. Her testimony was extremely brief, and she did not state how many times or where this occurred. She did not relate her testimony to any particular date or dates or to any other identifying event or events.

*Singo I*, 2002 WL 1838142, at *1-3.

## III. ISSUES PRESENTED FOR REVIEW

In his Amended Petition, Petitioner asserts the following claims for relief:

1. On remand, the trial judge violated Due Process by vindictively increasing Petitioner's effective sentence for his remaining convictions.

2. Petitioner's sentence was enhanced in violation of the Sixth Amendment.

3. Petitioner's counsel was ineffective at sentencing for failing to present mitigation age and failing to challenge the enhancement for age of the victim.

4. Admission of Petitioner's involuntary confession violated the Fifth Amendment.

5. Improper admission of prejudicial evidence rendered Petitioner's trial fundamentally unfair.

6. Trial judge's failure to instruct the jury on a lesser-included offense rendered Petitioner's trial fundamentally unfair.

7. Trial judge's improper handling of a question from the deliberating jury rendered Petitioner's trial fundamentally unfair.

8. State's failure to elect an offense violated Due Process.

## IV.     STANDARD OF REVIEW

### A.     AEDPA Review on the Merits

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a).  Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)).

The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court concludes that the decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

By its express terms, Section 2254(d)'s constrained standard of review only applies to claims that were "adjudicated on the merits" in the state court proceeding, including instances where the state court rules against the petitioner in a summary opinion that rejects all claims without discussion, or an opinion that addresses some claims but does not expressly address all

the federal claims presented. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013); *Harrington v. Richter*, 562 U.S. at 98–99; *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004). Where a claim has not been adjudicated on the merits in state court but is still subject to federal review despite the bars of exhaustion and default, "federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo.*" *Moritz v. Lafler*, 525 F. App'x 277, 282 (6th Cir. 2013) (quoting *Cone v. Bell*, 556 U.S. 449, 472 (2009)); *accord Bies v. Sheldon*, 775 F.3d 386, 395–96 (6th Cir. 2014) ("Because Bies' *Brady* claim was never 'adjudicated on the merits in State court proceedings,' the limitations imposed by § 2254(d) do not apply, and we review the claim de novo.").

**B.      Exhaustion and Procedural Default**

*1.      Exhaustion*

28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Cullen v. Pinholster*, 563 U.S. at 182. The petitioner must "fairly present"[1] each claim at all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in that court in order to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003), *cert. denied*, 541 U.S. 956 (2004); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010) ("*Adams* not only requires the federal courts to ensure that the state courts have the first opportunity to review and evaluate legal claims ... but also mandates that

---

[1] For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

the federal courts respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes the law and policy-making function of that court and the court's desire not to be entangled in the business of simple error correction").

This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, federal courts should consider whether the petitioner: (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law." *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court. *Id.* This

does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner*, 581 F.3d at 414.

## 2. *Procedural Default*

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same).[2] If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32; *see also Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause

---

[2] "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). "A discretionary state procedural rule ... can serve as an adequate ground to bar federal habeas review ... even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* at 1128 (quoting *Kindler*, 558 U.S. at 60–61) (internal citations & quotation marks omitted).

and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

A petitioner seeking to overcome procedural default must establish prejudice as well as cause. To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 495–96); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## V.     ANALYSIS AND DISCUSSION

### A.     Claim 1 – Vindictive Sentence Increase

As recounted above, the trial court originally imposed an effective 50 year sentence, with all of the aggravated sexual battery sentences to run concurrent with the first rape sentence. On remand after the TCCA vacated Petitioner's convictions on three of the rape counts, the trial court ordered two of the aggravated sexual battery sentences to run consecutive to the remaining rape sentence, for an effective total sentence of 49 years. Petitioner asserts that this constitutes a vindictive increase in the sentence for his remaining convictions, in violation of his

right to due process as set forth in *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). (ECF No. 17, at 12–15.)

Petitioner raised this claim in his post-conviction action in state court, and on appeal from the denial of post-conviction relief. The TCCA concluded the claim was without merit:

> The petitioner claims that the trial court "failed to specify why [it] changed the sentencing to run two of the aggravated sexual battery counts consecutively," and absent such an explanation, "there is a presumption of vindictiveness that impairs Petitioner's right to seek appellate review of the Trial Court's judgments." However, we find this claim to be without merit. Tennessee's Post-Conviction Procedure Act states,
>
> > A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.
>
> Tenn. Code Ann. § 40-30-106(h) (2006). In this case, the petitioner bases his judicial vindictiveness claim largely on the trial court's alleged failure to justify running two of the aggravated sexual battery counts, which had been imposed concurrently at the first sentencing hearing, consecutively. However, the petitioner argued this issue on direct appeal, and this court considered and rejected his argument, concluding that the trial court's revised sentence of forty-nine years was appropriate. *Perry Singo II*, 2004 WL 343968, at *2-*3. Thus, the petitioner cannot be provided relief on this issue.
>
> Furthermore, even if the issue had not been previously determined, the petitioner's claim would be without merit. The United States Supreme Court has held that a harsher sentence after a new trial raises a presumption of "judicial vindictiveness," which may be overcome by an affirmative showing on the record of the reasons for the harsher sentence. *North Carolina v. Pearce*, 395 U.S. 711, 725-26, 89 S.Ct. 2072, 2080-81, 23 L.Ed.2d 656 (1969). In subsequent cases, the Court clarified that the presumption of vindictiveness announced in *Pearce* "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." *See Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986)). The Supreme Court limited the application of *Pearce* to circumstances "in which there is a 'reasonable likelihood' ... that the increase is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Smith*, 490 U.S. at 801 (citing *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984)).
>
> In the instant case, the petitioner argues that the trial judge exercised vindictiveness because he imposed a sentence of forty-nine years and converted

two of the sentences for aggravated sexual battery from concurrent sentences to consecutive ones. However, the petitioner ignores three main points. First, the petitioner was given one less year in his revised sentence than in his original sentence, so the revised sentence was not greater than the first one. Second, while the trial judge in the resentencing hearing did not give explicit reasons as to why the sentences on two of the aggravated sexual battery convictions were to run consecutively, the trial court did give several rational reasons for imposing its sentence, such as the time span of the petitioner's undetected sexual activity, the letters he wrote while in prison which indicated that if released, he would continue his inappropriate sexual activity, the petitioner's belief that he had done nothing wrong in committing the offenses, and the nature and scope of the petitioner's sexual acts. Finally, as the post-conviction court noted, "the trial court [upon resentencing] did exactly what the appellate court instructed it to do, to wit: '... we remand to the trial court for a determination of whether any of the aggravated sexual battery convictions should run consecutively to the child rape conviction.'" In light of the evidence, the petitioner did not prove by clear and convincing evidence that the trial court exercised vindictiveness upon resentencing.

*Singo III*, 2007 WL 1836050, at *2-3.

The TCCA thus fairly summarized the presumption of vindictiveness created by *Pearce*, including the fact that it applies where a defendant receives a "harsher sentence" on remand. Specifically, *Pearce* applies when a trial court imposes a "more severe sentence" on remand, and requires a judge who imposes such a sentence to affirmatively connect the new sentence to "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726. The TCCA rejected Petitioner's *Pearce* claim primarily because his second effective sentence was a year shorter than his first effective sentence, "so the revised sentence was not greater than the first one." *Singo III*, 2007 WL 1836050, at *3.

Petitioner asserts that his sentence "was unquestionably 'more severe'" on remand, and that "[i]t would be an unreasonable application of *Pearce* to characterize the sentence any other way." (ECF No. 53, at 14.) Case law does not support that position. To the contrary, although neither party raises this fact in his brief, the United States Court of Appeals for the Sixth Circuit has repeatedly rejected the argument that *Pearce* applies where a petitioner's total effective sentence after remand is the same or less than his original sentence:

> [A]s we have held, the *Pearce* presumption does not apply when a defendant is resentenced to an equal or lesser aggregate term. *See United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir.2002). "In determining whether the resentence term is ... longer than ... the original sentencing term," we "compare the total resentence term with the total original sentence." *Rodgers*, 278 F.3d at 604. Here, Craycraft's total original sentence was 22 years and his resentence term was 16 years—a net decrease of six years. This net reduction cannot genuinely be called a "more severe sentence" under *Pearce*.

*Craycraft v. Cook*, – F. App'x –, 2015 WL 8479554, at *4 (6th Cir. Dec. 10, 2015). Accordingly, the TCCA's conclusion that Petitioner's second sentence was "not greater than" his first one for *Pearce* purposes is consistent with the view of the majority of federal courts of appeal. *Craycraft* at *4 (collecting cases and observing that "the majority of circuits follow the aggregate approach").

It is impossible, therefore, for this Court to find that the TCCA's holding "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," as required to grant relief under AEDPA's unreasonable-application prong. *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Because Petitioner's claim fails at the initial threshold of *Pearce* – whether the sentence on remand was "more severe" – it is unnecessary to reach the question of whether the trial court's justifications for the second sentence would satisfy *Pearce*. This claim will be dismissed.

### B. Claim 2 – Enhanced Sentence

Petitioner asserts that the trial court enhanced his punishment from the presumptive sentences for his offenses to the maximum, based on facts found by the judge rather than the jury, in violation of his Sixth Amendment right to a jury trial as set forth in *Blakely v. Washington*, 542 U.S. 296 (2004).[3] (ECF No. 17, at 15–16.) Respondent contends that Petitioner has procedurally defaulted this claim by failing to raise it in state court. (ECF No. 48, at 11–12.)

---

[3] Claim 2 of the Amended Petition also included a claim that the trial court violated his Sixth Amendment rights by making his sentences consecutive based on judge-found facts. (ECF No. 16, at 17.) Petitioner has since affirmatively withdrawn that claim as foreclosed by *Oregon v. Ice*, 550 U.S. 160 (2009). (ECF No. 35.)

Petitioner acknowledges that although he raised a closely related Sixth Amendment claim in his post-conviction petition, he did not appeal the denial of post-conviction relief based on any such claim and has been denied permission to reopen his post-conviction proceedings to further litigate his claim. (ECF No. 53, at 10, 16–17.)  A claim that is raised at post-conviction but not included in the appeal from denial of relief is defaulted. *Nesser v. Wolfe*, 370 F. App'x 665, 670 (6th Cir. 2010).  This claim will be dismissed as procedurally defaulted.

### C.     Claim 3 – Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial counsel was ineffective at sentencing in two ways.  First, in his Amended Petition he alleges that counsel was ineffective for failing to present evidence from a psychologist's report that Petitioner had been sexually abused as a child and suffered from a personality disorder as mitigation evidence at sentencing. (ECF No. 17, at 18–19.)  In his Reply, Petitioner adds that mitigation evidence from the report that counsel was ineffective for failing to argue included a psychological test result indicating that Petitioner was at "low risk" to reoffend. (ECF No. 53, at 18–19.)   Second, he alleges that counsel was ineffective for failing to oppose the use of his victim's age as an enhancing factor when it was already a factor in the level of the offense for which he was convicted (Class A felony rather than Class B). (ECF No. 17, at 19.)

Petitioner raised these claims on post-conviction, but the TCCA affirmed denial of relief:

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72, 113 S.Ct. 838, 842-44, 122 L.Ed.2d 180 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Strickland standard has been applied to the right of counsel under Article I, Section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n. 2 (Tenn.1989).

The petitioner must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 579-80 (Tenn.1997). The performance prong requires the petitioner to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. *Id.* at 687.

In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974), and *United States v. DeCoster*, 487 F.2d 1197, 1202-04 (D.C.Cir.1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See DeCoster*, 487 F.2d at 1201.

### Failure to Challenge Application of Enhancement Factor

The petitioner claims that his attorney provided ineffective assistance of counsel by failing to object to the state's mentioning of the victim's age during the resentencing hearing. Had the attorney done so, the petitioner claims that the enhancement factor of "particular vulnerability because of age or physical or mental disability" would not have applied. See Tenn. Code Ann. § 40-35-114(5) (2006). However, we cannot grant relief to the petitioner on this claim. We initially note that the petitioner did not submit the transcript from the original (2000) sentencing hearing, and that the resentencing hearing transcript only addresses the issue of concurrent or consecutive sentencing. Without the transcript of the original sentencing hearing, this court is unable to determine if the petitioner's trial counsel failed to challenge the enhancement factors at the sentencing hearing as alleged.

Additionally, while the petitioner is correct that in most circumstances elements of an offense cannot be used as enhancement factors, our supreme court has held that in cases such as this one, "[the child's age] alone does not prohibit the use of the vulnerability enhancement factor. The reason is that the relevant inquiry is not simply whether the victim is under the age of thirteen, but instead whether the victim was particularly vulnerable because of age or physical or mental disability." *State v. Adams*, 864 S.W.2d 31, 35 (Tenn. 1993) (emphasis in original). For purposes of applying the enhancement factor, "particularly vulnerable" means "incapable of resisting, summoning help, or testifying against the perpetrator.

This is a factual issue to be resolved by the trier of fact on a case by case basis." *Id.* Thus, even had the petitioner's attorney objected to the state's mentioning the victim's age at either sentencing hearing, the trial court still could have applied the enhancement factor if it determined that the child was "particularly vulnerable ." Finally, even if this particular enhancement factor would have been excluded, the trial court still could have imposed the maximum sentence in light of the other evidence presented in this case; of note, while our court overturned three of the rape convictions based on evidence that the offenses were committed in Michigan and not Tennessee, these offenses could have been used by the trial court to justify use of the "previous criminal behavior" enhancement factor, see Tenn. Code Ann. § 40-35-114(1), as the jury found the facts of these offenses beyond a reasonable doubt. In short, the petitioner has failed to show how his attorney's failure to object to the state's mentioning the victim's age has prejudiced him. Accordingly, we must deny the petitioner relief on this issue.

### Failure to Provide Evidence of Mitigating Factors

The petitioner claims that his attorney failed to provide evidence of mitigating factors at either sentencing hearing. According to the petitioner, had the attorney done so, the petitioner may have avoided being sentenced to the maximum term on each count. At the post-conviction hearing, the petitioner's trial attorney testified that he did not introduce evidence of the petitioner's alleged childhood abuse and did not introduce evidence of any mental illnesses from which the petitioner allegedly suffers. However, the petitioner did not introduce any evidence at the post-conviction hearing that would have supported his claims. The petitioner did not have any expert testify at the post-conviction regarding his mental history, and the petitioner did not include a psychological evaluation as part of his post-conviction petition. Absent any evidence that would have supported applying mitigating factors, the petitioner is not entitled to relief on this issue. *See Michael Wright v. State*, No. M2004-00393-CCA-R3-PC, 2005 WL 544729, at *4 (Tenn. Ct. Crim. App. at Nashville, Mar. 8, 2005).

*Singo III*, 2007 WL 1836050, at *4-5.

Claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688. Mere attorney ignorance or inadvertence will not constitute "cause" unless the error rises to the level of a constitutional violation. *See Coleman*, 501 U.S. at 752–55. The "prejudice" component of the claim "focuses on the question

of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In assessing counsel's performance, a reviewing court must be highly deferential and avoid the "second-guess[ing of] counsel's assistance . . . , [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The court must determine whether, under the circumstances, counsel's allegedly unreasonable acts or omissions "were outside the wide range of professionally competent assistance." *Id.* at 690. In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted).

Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court has further explained the *Strickland* prejudice requirement as follows:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

*Id.* (internal quotation marks and citation omitted).

In this case, the TCCA correctly identified the proper standard for review of Petitioner's ineffective-assistance claims and applied it reasonably. First, it found that even assuming that counsel had not argued against reliance on the victim's age at sentencing, no prejudice arose from that omission because the circumstances of the case would still have allowed the trial court to apply the "vulnerable" victim enhancement and/or other enhancements appropriate to the case. Petitioner has not cited any case law establishing that that conclusion was unreasonable.

Moreover, consideration of a sex abuse victim's age in determining the level of offense as well as enhancing the sentence for that offense does not amount to "impermissible double counting" that offends the constitution. *U.S. v. Hochschild*, 442 F.3d 974, 979 (6th Cir. 2006).

With regard to the alleged failure to present mitigation evidence, the state court essentially concluded that Petitioner had failed to establish deficient performance or prejudice by failing to offer the mitigation evidence that he faulted trial counsel for not using. According to Petitioner, that evidence includes information from a psychological evaluation of Petitioner establishing that he "had suffered sexual abuse as a child, that he suffered from a personality disorder, and that he fell in the 'low risk category' to reoffend." (ECF No. 17, at 18.) Although that psychological evaluation was not offered as an exhibit during the post-conviction hearing, trial counsel testified at the hearing from memory about why he did not try to use the psychologist's report about Petitioner's personality disorder and history as a sex abuse victim at trial: "I recall that was not a favorable report; and I don't think I even chose to introduce that or argue anything in that because I think overall it was detrimental." (ECF No. 24-21, at 8.) Counsel was correct.

Petitioner has located the psychological report in the trial court's file and submitted it under seal in this action, with a motion to expand the record to include the report.[4] (ECF No. 51-1, at 34–41; ECF No. 52.) The parties dispute whether this report was ever made part of the state court evidentiary record (ECF No. 52, at 1; ECF No. 55, at 1–2), but it does appear on the list of exhibits compiled by the Dickson County Circuit Court for the purpose of Petitioner's second direct appeal in 2003 following his resentencing. (ECF No. 51-1, at 2.) Accordingly, the Court considers this report to be part of the state court record and therefore not subject to the prohibition of *Cullen v. Pinholster*, 563 U.S. 170 (2011). It is a proper subject for consideration

---

[4] In his motion to expand the record, Petitioner also includes Volume Two of the transcript of his trial. (ECF Nos. 49-1, 52.) Inclusion of this portion of the record is a moot point, because it is already part of the state court record filed by Respondent in this matter. (ECF No. 24-5.)

under 28 U.S.C. § 2254(d)(1), and Petitioner's motion to expand the record in this case to include it will be granted.

The report, however, does not aid Petitioner's cause.  While Petitioner myopically focuses on the potential mitigating effect of his personality disorder diagnosis, history of having been sexually abused and the fact that his results on one actuarial-based test placed him in a low risk category for recidivism, the impact of the entire report is overwhelmingly negative.  The psychologist repeatedly pointed to the fact that throughout his interview with her, Petitioner demonstrated a total lack of empathy for his victim or remorse for his behavior.  She observed that he tended to justify and be dishonest about his "deviant sexual behavior," and to blame the victim's mother for his abuse of the victim.  He acknowledged being sexually attracted to the victim, who was a young child, but was not interested in treatment for his sexual deviance.  His questionnaire responses demonstrated "deviant sexual attitudes," including a belief that "[w]hen young children walk around with little or no clothes on, it is kind of sexy," and a disagreement with the statement that "[a] 13 year old cannot really consent to sex with an adult."  The psychologist's ultimate conclusion was that Petitioner was a risk to reoffend:

> Results from Mr. Singo's psychosexual evaluation raises [sic] several concerns regarding his chance of re-offending.  That is, although the STATIC-99 suggested that he is at a low risk to reoffend, upon further review of the evaluation, Mr. Singo exhibited several characteristics which indicate that he is at a higher risk to commit another sexual offense than the STATIC-99 reflects.  One outstanding fact is that, despite being incarcerated, Mr. Singo continued to write several letters detailing the sexual molestation.  This would suggest that he is limited in his ability to control his deviant sexual impulses.  It also indicates that he continues to fantasize about his crime by reliving the events through writing about them.  Mr. Singo also denies the extent of his involvement in his crime, choosing to blame his partner instead.  Although his [sic] "admits" to his crime, he takes no sincere responsibility for his actions and rationalizes his behavior.  Mr. Singo's admission of being a victim of past sexual abuse and his fetish regarding women's clothing are also factors which contribute to an increase risk to reoffend.  Finally, at no time during the psychosexual evaluation did Mr. Singo express any empathy or concern for his victim.  He related events in a detached and matter of fact manner and exhibited a profound lack of remorse.  ***These facts would suggest that Mr. Singo would likely commit another sexual offense if he were allowed to return to the community***.  Regardless of his

placement, Mr. Singo should be required to successfully complete an intensive sex offenders treatment program.

(ECF No. 51-1, at 41 (emphasis added).) Thus, one of the very facts that Petitioner faults trial counsel for failing to offer – his own history as a victim of sex abuse – actually *increases* the likelihood of his reoffending, according to this psychologist. It is beyond doubt that any reliance on this report or the testimony of the expert who wrote it would have done more harm than good to Petitioner's effort to avoid the maximum sentence for his crimes. Accordingly, the state court's determination that Petitioner was not entitled to relief on this claim was not unreasonable.

### D. Claim 4 – Involuntary Confession

Petitioner alleges that his confession was coerced, and therefore admitted in violation of the Due Process Clause, because his questioners "effectively promised him that the sooner he confessed, the sooner he could [be] reunited with his family." (ECF No. 17, at 19–20.)

Respondent asserts that Petitioner defaulted this claim on direct appeal by failing to cite any authority in support of it as required by state procedural rules. (ECF No. 48, at 15–16.) Petitioner's brief on direct appeal included the following argument regarding this claim:

> The admissions made to Detective Mike Fleaner and DCS worker Stacy Loveless, should not have been admitted at trial, because they were not given voluntarily. [TE page 75, line 17 – page 70, line 6 & page 90, line 3 – line 12] It is clear from the Defendant's statement that he was lead [sic] to believe that he would be reunited with this family and go to counseling, if he admitted something. The Defendant, after numerous denials and demands for a polygraph, finally made admissions to Detective Fleaner. [Exh 2 and Defendant's full statement] Even though the Defendant had been advised of his Miranda rights, it is clear that he was talked into making admissions through the Detective and the DCS case worker's assurances in regard to reuniting him with his family after counseling.

(ECF No. 24-10, at 17.)

The TCCA found the claim was waived, and alternatively found that it was without merit:

The defendant argues his statements to Detective Fleanor and Stacey Loveless were involuntary and, therefore, should not have been admitted into evidence. This issue is waived as the defendant has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b); *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Ct. Crim. App. 1997). Regardless of this waiver, we conclude this issue is without merit.

A non-custodial interrogation must be voluntary in order to be admissible. Confessions that are involuntary, i.e., the product of coercion, whether it be physical or psychological, are not admissible. *Rogers v. Richmond*, 365 U.S. 534, 540, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). The test of voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). The crucial question is whether the behavior of the state's officials was "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting *Rogers*, 365 U.S. at 544, 81 S.Ct. at 741).

There is nothing in the record to indicate state officials overbore the defendant's will. Both Detective Fleanor and Stacey Loveless testified at the pre-trial hearing that the defendant voluntarily agreed to the interview when he made his first confession on December 11, 1998. Detective Fleanor further testified that although the defendant was not in custody, he was advised of his rights and signed an admonition and waiver. Stacey Loveless stated she met with the defendant again on February 16, 1999, at his request. The defendant did not testify at the hearing. The record clearly justifies the trial court's finding that the defendant's statements were voluntary and admissible.

*Singo I*, 2002 WL 1838142, at *3-4.

Rule 10(b) of the Rules of the Tennessee Court of Criminal Appeals provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." The Sixth Circuit has confirmed that this rule is "an independent and adequate state ground for denying [a] claim." *Middlebrooks v. Bell*, 619 F.3d 526, 538 (6th Cir. 2010), *vacated on other grounds sub nom. Middlebrooks v. Colson*, 132 S. Ct. 1791 (2012). Because the state court found Petitioner's claim waived pursuant to this procedural bar, it is procedurally defaulted for the purpose of federal habeas review despite the fact that the state court conducted an alternative analysis of the merits. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (State courts "[n]eed not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground

doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *accord Scott v. Mitchell*, 209 F.3d 854, 865–66 (6th Cir.2000) ("*Harris* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground."); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir.1998) ("Coe claims that the court of appeals's alternative holding that he would lose on the merits anyway means that he is not procedurally barred, because the state courts in fact reached the merits. This argument fails due to the Supreme Court's decision in *Harris* ....").

In the alternative, the Court finds that the state court's conclusion that Petitioner's confession was not coerced is not contrary to or an unreasonable application of clearly established federal law. As the state court observed, Petitioner was advised of his rights and signed an admonition and waiver form despite not being in custody at the time of his confession. (ECF No. 24-9, at 4.) That is a significant distinction between his case and the one on which he relies, *Lynum v. Illinois*, 372 U.S. 529 (1963). *Loza v. Mitchell*, 766 F.3d 466, 480 (6th Cir. 2014) ("Unlike the defendants in [*Lynum*], Loza was read his Miranda rights and voluntarily waived them, making it very difficult for him to demonstrate that his confession was nonetheless involuntary.") And in this case, the detective questioning Petitioner explicitly told him that "I can't make you any promises about anything" because "I don't have that authority to make you a promise." (ECF No. 24-4, at 80.) When Petitioner asked if he was going to lose his family, the detective's response was "Hey, I'm not going to lie to you, you may for awhile." (ECF No. 24-4, at 81.) When Petitioner asked the children's services worker who participated in his questioning, "Well what would happen if I admit to something like this? What would – I'm still not going to go to my home," she responded "Well, no." (*Id.*) It was not unreasonable, therefore, for the state court to find that the totality of the circumstances established that Petitioner's

statement was voluntary and not the result of any coercion or promise to return him to his family if he confessed.

###    E.    Claim 5 – Prejudicial Evidence

Petitioner claims that his right to Due Process was violated by the trial court's admission of three separate categories of evidence: (1) photographs depicting his sexual abuse of the victim; (2) letters by Petitioner about his sexual abuse of the victim; and (3) expert opinion testimony by fact witness Stacey Loveless. (ECF No. 17, at 20.)  Respondent asserts that all of these subclaims are procedurally defaulted (ECF No. 48, at 19–20), and, in the alternative, that the state court's rejection of the claims was not contrary to or an unreasonable application of federal law. (ECF No. 48, at 20–23.)

Petitioner's subclaim concerning the testimony of Stacey Loveless is procedurally defaulted and appears to have been waived in this proceeding as well.  Although Petitioner complained on direct appeal about the latitude the trial court granted in Ms. Loveless's testimony (ECF No. 24-10, at 25), the TCCA found the claim waived: "This issue is waived as the defendant has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b)." *Singo I*, 2002 WL 1838142, at *9 (additional citation omitted).  As discussed above, TCCA Rule 10(b) is an adequate and independent ground for denial of relief.  Moreover, in this Court, the Amended Petition provides nothing more than an unsupported conclusion that the testimony was "improperly allow[ed]" (ECF No. 17, at 20), and Petitioner fails to address either the default or the merits of this claim in his Reply. (ECF No. 53, at 7, 21–23 (discussions of "evidentiary errors" not including reference to Loveless testimony).)

Similarly, the TCCA appears to have found any objection to the admission of Petitioner's letters and notes, aside from the need to authenticate them, to have been waived at trial:

> On appeal, the defendant submits the trial court erred in allowing the state to present evidence of the defendant's letters and notes because they referred to prior bad acts outside the period of the indictment and to acts not included in the indictment. The record shows a hearing was held approximately two months

before trial. The trial court found the letters might be relevant, but their prejudicial effect might outweigh their probative value. Therefore, the trial court instructed the defendant to specify prior to trial which parts of the letters it wanted the court to redact; the trial court indicated it would then rule on their admissibility. The prosecutor announced she would meet with defense counsel to see if they could agree to the admissibility of portions of the letters; she stated that if they could not agree, they would request a ruling from the trial court.

At trial, just prior to entering excerpts from the defendant's letters into evidence, the state announced to the trial court, "Your Honor, as you know, we've already agreed on these letters." The defendant then objected to the evidence, arguing only that the state had not authenticated the letters. While discussing this objection, the trial court and the prosecutor mentioned a hearing apparently held just prior to the start of the trial in which the admissibility of the letters was determined. The appellate record does not contain a transcript of this hearing.

In response to the defendant's objection, the state presented the testimony of jailer Rhonda Felts, who identified the letters as being in the defendant's handwriting. Then the state presented the excerpts from the letters to the jury without further objection from the defendant.

It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn.1999). Regardless, the testimony of the jailer, who identified the defendant's handwriting, was sufficient to authenticate the letters.

*Singo I*, 2002 WL 1838142, at *8-9.

And again, Petitioner has failed to address either the apparent state court waiver or the merits of this subclaim in this Court, beyond the Amended Petition's conclusory allegation that the letters were "improperly admitt[ed]." (ECF No. 20, at 17.) In reply to Respondent's assertion that all of Petitioner's evidentiary claims were defaulted because they were presented in state court solely as a matter of state law, Petitioner argues that "the issue should be deemed fairly presented and exhausted" because the TCCA's harmless error determination was achieved through a standard identical to the applicable federal standard. (ECF No. 53, at 7.) But the TCCA's harmless error finding was limited to the admission of the photographs, as discussed below, and did not relate to the letters. And Petitioner's argument of the merits of his claims in his Reply is limited to the issue of the photographs. (ECF No. 53, at 21–23.) Like the Loveless testimony subclaim, this subclaim is both defaulted and waived.

Respondent correctly observes, and Petitioner concedes (ECF No. 53, at 7), that his direct appeal challenge to the admission of the photographs was based solely on state law. (ECF No. 24-10, at 17–18.) The TCCA rejected the claim on its merits, also relying solely on state law:

> Tennessee Rule of Evidence 404(b) provides that evidence of other crimes or acts, although not admissible to prove the character of a person in order to show action in conformity with the character trait, may be admissible for other purposes. Prior to allowing such proof, the trial court should conduct a jury-out hearing, determine whether there is a material issue other than conduct conforming with the character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); *State v. West*, 844 S.W.2d 144, 149 (Tenn. 1992).
>
> Generally, this rule is one of exclusion, but there are exceptions. *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Ct. Crim. App. 1999). The generally recognized exceptions to the rule allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common scheme or plan. *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980). There is no "sex crimes" exception allowing the admission of evidence of sexual crimes by the defendant against the victim committed outside the period of the indictment. *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn. 1994). Our standard of review of the trial court's determinations under Rule 404(b) is whether the trial court's ruling was an abuse of discretion. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997).
> In the instant case, the trial court conducted a jury-out hearing and found the photographs were circumstantial evidence that the "same things continued to happen," and they corroborated the victim's statements contained in the medical report. We respectfully disagree with the trial court's finding that the photos had probative value other than to prove the defendant had previously sexually abused the victim. This is the kind of evidence which is inadmissible under Rule 404(b). Therefore, we agree with the defendant and the state that the trial court erred in admitting the evidence.
> . . .
>
> The record indicates prior to the start of the trial, the defendant moved the trial court to exclude evidence of the defendant's acts against the victim in Michigan, and the trial court granted the defendant's motion. During trial, defense counsel twice questioned state witnesses regarding the Michigan acts. Upon the state's inquiry and during a jury-out hearing, defense counsel announced to the trial court that the defendant's only defense was venue; therefore, he would argue any offense defendant committed had occurred in Michigan rather than Tennessee. Thus, from defendant's perspective, the Michigan acts, although not the actual pictures, were relevant to his defense. Further, the defendant confessed to Detective Fleanor he committed one offense of child rape and four offenses of aggravated sexual battery, which corresponded to the times alleged in various counts of the indictment. The other evidence introduced against the

defendant, including his writings, were devastating. Given these facts, we conclude the trial court's errors in allowing the photographs into evidence and in instructing the jury how it could consider them were harmless. See Tenn. R. App. P. 36(b).

*Singo I*, 2002 WL 1838142, at *7–8 (Tenn. Crim. App. Aug. 9, 2002).

Regardless of whether Petitioner "fairly presented" this claim in state court, he has failed to establish that he is entitled to relief under AEDPA. In his Reply, Petitioner devotes the majority of his argument on this subclaim to establishing that the photographs were prejudicial and improperly admitted, a point already conceded by both the state and the TCCA.[5] He does not, however, cite any Supreme Court authority making the state court's finding of harmless error contrary to or an unreasonable application of clearly established federal law. He refers to the venue issue as a "formalistic dodge" (ECF No. 53, at 23), but completely disregards the rest of the state court's analysis. Petitioner had confessed to every count for which his convictions were affirmed, and the other evidence against him was indeed "devastating." Even if other courts might have ruled differently, the TCCA's finding of harmless error in these circumstances was not unreasonable.

### F.    Claim 6 – Lesser-Included Offense Instruction

Petitioner claims that the trial court violated his right to Due Process by failing to instruct the jury on the lesser-included offense of simple assault. (ECF No. 17, at 20.) This claim was presented and resolved on direct appeal purely as a matter of state law:

The trial court did not charge any lesser-included offenses of aggravated sexual battery. The defendant maintains the trial court erred in not charging the jury as to Class B misdemeanor assault as a lesser-included offense of the indicted offenses of aggravated sexual battery. Class B misdemeanor assault is the intentional or knowing physical contact with another which a reasonable person would regard as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101(a)(3). Our state supreme court has held Class B misdemeanor assault is a lesser-included offense of aggravated sexual battery. *See State v. Swindle*, 30 S.W.3d 289, 293 (Tenn. 2000).

---

[5] The photographs in question do not appear to be in the record before this Court, but the Court is content to assume that they are extremely prejudicial.

If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. *State v. Bowles*, 52 S.W.3d 69, 75 (Tenn. 2001). To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense. *State v. Burns*, 6 S.W.3d 453, 469 (Tenn. 1999). The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. *State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001); *Burns*, 6 S.W.3d at 469. Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense. *Burns*, 6 S.W.3d at 469.

Based on *Swindle*, we determine there was evidence in the instant case which could have been accepted by reasonable minds to establish Class B misdemeanor assault, and the evidence was legally sufficient to support a conviction for that offense. Though we find the trial court erred by failing to charge the lesser-included offense, we conclude the error is harmless.

Harmless error relating to the failure to charge lesser-included offenses must be shown "beyond a reasonable doubt." *Ely*, 48 S.W.3d at 727. The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002). In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id.*

Having conducted a thorough examination of the record, we can only conclude the sexual contact offenses were committed for the sexual arousal or gratification of the defendant. A reasonable mind could reach no other conclusion. The defendant's theory at trial was the state's proof was not sufficient to establish venue in Dickson County, Tennessee, and any offenses were committed in Michigan. Further, the verdict reflects the jury rejected the defendant's theory and adopted the state's. Therefore, the trial court's failure to instruct the jury as to the lesser-included offense of Class B misdemeanor assault was clearly harmless beyond a reasonable doubt.

*Singo I*, 2002 WL 1838142, at *10 (Tenn. Crim. App. Aug. 9, 2002).

Again, even assuming that this claim was "fairly presented" to the state courts, Petitioner has not established that the state court's harmless error finding was contrary to or an unreasonable application of clearly established federal law. His treatment of this claim consists of the same three sentences repeated in the Amended Petition and the Reply, and the only case he cites is *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), for the general standard for violations of due process. (ECF No. 17 at 20; ECF No. 53, at 23.) Presenting his claim at that level of generality fails to satisfy the "clearly established" requirement of § 2254(d)(1). *See Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (disapproving lower court's reliance on "a

broad right" to present evidence and stating that "[b]y framing our precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'").

### G.     Claim 7 – Improper Handling of Jury Question

Petitioner concedes that this claim is procedurally defaulted and offers no argument to excuse the default. (ECF No. 53, at 23.)  This claim will be dismissed.

### H.     Claim 8 – Election of Offenses

Petitioner claims that his right to due process was violated because the prosecution's failure to elect offenses allowed the jury to convict him of four counts of battery without specifying the time or means of the offenses beyond time-frames of 5–10 days for each count. (ECF No. 17, at 21.)  The TCCA rejected this claim on its merits:

> The doctrine of election requires the state to elect a set of facts when it has charged a defendant with one offense, but there is evidence of multiple offenses. *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). This doctrine is applied to ensure that the defendant can prepare for the specific charge, to protect the defendant from double jeopardy, and to ensure that some jurors do not convict on one offense and other jurors on another. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). Issues of jury unanimity usually arise where the state presents evidence showing more than one criminal offense, but the underlying charging instrument lacks specificity as to the offense for which the accused is being tried. *State v. Brown*, 762 S.W.2d 135, 136-37 (Tenn. 1988).

> In the instant case, the indictment specifically alleged the defendant committed four counts of child rape by fellatio on four distinct occasions: between November 1 and November 11, 1998; between November 12 and November 21, 1998; between November 22 and November 30, 1998; and between December 1 and December 5, 1998. It also alleged he committed four separate acts of aggravated sexual battery during each of those time periods. These distinct time periods corresponded with the defendant's confession relating to discrete acts on the first of November, the middle of November, the end of November, and the first of December. Though there was evidence of other offenses, none of those offenses met the description of the allegations made in the indictment. The jury was presented with a single set of facts with respect to each count charged. Therefore, we conclude the trial court did not err in failing to require the state to make an election.

*Singo I*, 2002 WL 1838142, at *9.

Petitioner does not address the substance of this state court ruling in either his Amended Petition or his Reply, and does not assert that it is contrary to or an unreasonable application of any Supreme Court precedent. The only case he cites in support of his claim is *Schad v. Arizona*, 501 U.S. 624, 636–37 (1991), which held that the constitution did not require Arizona to make an election between theories of premeditation and felony murder to justify a first-degree murder conviction. Even assuming that *Schad*'s analysis would apply to this case, Petitioner has failed to demonstrate that the state court committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," as required to grant relief under AEDPA's unreasonable-application prong. *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

VII. **CONCLUSION**

For the reasons set forth above, all of Petitioner's claims are either defaulted or fail on their merits under AEDPA. Accordingly, the Court will deny the requested relief and dismiss the petition.

An appropriate order shall enter.

_____
Kevin H. Sharp, Chief Judge
United States District Court